IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SAVANNAH K. HIGH and                )
IZAIAH L. JOHNSON, substitute       )
parties for VERONICA L. HIGH,       )
deceased,                           )
                                    )
            Plaintiffs,             )
                                    ) Case No. CIV-18-317-RAW-KEW
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
            Defendant.              )

### REPORT AND RECOMMENDATION

Plaintiffs Savannah K. High and Izaiah L. Johnson, substitute parties for Veronica L. High, deceased (the "Claimant"), request judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. She had a high school education and worked in the past a retail clerk, shelter manager, and certified nurse assistant. Claimant alleges an inability to work beginning on January 26, 2014, due to limitations resulting from arthritis, enlarged heart, psoriasis, obesity, and depression.

### Procedural History

On August 20, 2014, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42

3

U.S.C. § 401, *et seq.*) of the Social Security Act. On August 28, 2014, she protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. 1381, *et seq.*). Claimant's applications were denied initially and upon reconsideration. On February 14, 2017, the Administrative Law Judge("ALJ") Christopher Hunt conducted a video hearing from Tulsa, Oklahoma, and Claimant appeared in Fort Smith, Arkansas. On June 6, 2017, a supplemental hearing was held by video. On August 2, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on July 21, 2018, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of light work, with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error because (1) the RFC fails to properly reflect her mental limitations; (2) the RFC fails to account for her impairments of psoriatic arthritis, COPD, and heart impairment; (3) the ALJ failed to properly evaluate the opinion of her treating physician W.A. Willis, M.D.; (4) the ALJ

4

erred by assigning significant weight to the testimony of medical expert Stephen Eppstein, M.D.; (5) the ALJ failed to properly evaluate her subjective complaints; and (6) the ALJ erred in finding she could perform the jobs identified in the decision.

### Mental RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative joint disease of the right knee, obesity, major depressive disorder, and generalized anxiety disorder. (Tr. 27). He determined Claimant could perform less than a full range of light work. In so doing, the ALJ found Claimant could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk up to four hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday. Claimant could perform simple, routine and repetitive tasks with occasional contact with co-workers and supervisors, but only superficial contact with the public. (Tr. 29).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of optimal goods assembler, table worker, and medical products assembler, all of which the ALJ found existed in significant numbers in the national economy. (Tr. 38-39). As a result, the ALJ concluded that Claimant was not under a disability from January 26, 2014, her alleged onset date, through the date of his decision. (Tr. 39).

Claimant first asserts the second psychological examination by Dr. Robert L. Spray, Ph.D., with completed medical source statement, constitutes new evidence, which is in direct conflict with the RFC. She contends that the case should be remanded because the medical expert, upon whose testimony the ALJ relied for Claimant's mental RFC, did not consider the second assessment which could have changed the RFC and the outcome of the case.

Claimant submitted a May 2, 2017 mental examination and completed medical source statement from Dr. Spray as new evidence to the Appeals Council after the supplemental hearing before the ALJ on June 6, 2017. The Appeals Council considered the mental examination and medical source statement and determined that the additional evidence "would not change the outcome of the decision." (Tr. 2).

"[T]he Appeals Council must consider additional evidence offered on administrative review—after which it becomes a part of our record on judicial review—if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011), citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). "[T]he Appeals Council is required only to 'consider' the new evidence—and a conclusory statement that it has done so is sufficient." *Vallejo v. Berryhill*, 849 F.3d 951, 953 (10th Cir. 2017). But because the additional evidence was accepted into the

6

record, the Court must consider whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the additional evidence. *Id.* at 956 (holding that when evidence is submitted to the Appeals Council and it becomes part of the record, the district court must "conduct a substantial evidence review by assessing the entire agency record," including the new "never-before assessed opinion."). Because Dr. Spray's mental examination and medical source statement were accepted by the Appeals Council into the record, the Court must determine whether the decision is supported by substantial evidence, including the most recent examination findings and the medical source statement from Dr. Spray.

Dr. Spray first examined Claimant in December of 2014. The examination revealed Claimant was sad and depressed, but she performed well on cognitive and memory tasks. Dr. Spray diagnosed Claimant with major depressive disorder (chronic) and social anxiety disorder. He noted Claimant had become slightly withdrawn, if not mildly reclusive, but she had adequate social skills. She communicated adequately, her cognitive function was adequate, her attention and concentration were adequate, she persisted well during the exam, and her pace appeared normal. (Tr. 446-49). Dr. Spray did not complete a medical source statement at that time.

Dr. Spray examined Claimant again on May 2, 2017. Although Claimant's examination findings on cognitive and memory tasks were

similar to her prior examination, her affect was tearful and she reported additional information not reported during the first examination. For example, Claimant reported to Dr. Spray that she yelled at her children and had episodes of unprovoked anger. She also experienced "breakdowns when dealing with [her] children," and she felt she did not have "the financial resources to get things that they need." Claimant reported thoughts of self-harm, but no plans of harming herself. When around groups of people or in stores, Claimant felt "weak and shaky" and sometimes would "break out in sweats" and have difficulty breathing with rapid heartbeat. Dr. Spray diagnosed Claimant with major depressive disorder (moderate, chronic), social anxiety disorder, and generalized anxiety disorder. (Tr. 9-12).

Dr. Spray completed a medical source statement in June of 2017, based upon his second examination. With regard to occupational functions, he noted Claimant had no limitations with following work rules, moderate limitations in relating to co-workers and independently functioning, marked limitations interacting with supervisors and simple work-related decisions, and severe limitations with dealing with work stress and demonstrating reliability. Considering more specific limitations for understanding and memory, Dr. Spray noted Claimant ranged from none to only moderate limitations in all areas. However, when assessing specific limitations in areas of social functioning, Dr.

Spray determined Claimant had marked, severe, and extreme limitations in functioning. With regard to sustained concentration and persistence, he determined Claimant had moderate, marked, and severe limitations. Considering Claimant's adaptive functioning, he concluded she had marked and severe limitations. Dr. Spray estimated that Claimant's level of impairment had existed continuously for more than one year prior to the date of the examination. (Tr. 13-16).

A review of the decision shows the ALJ primarily relied upon the testimony of medical expert Rick Adams, Ph.D., at the June 6, 2017 hearing, when assessing Claimant's mental RFC. Based upon his education, experience, and a review of the medical evidence (including the mental examination of Dr. Spray from December of 2014), Dr. Adams determined Claimant "would be limited to simple routine tasks with only occasional contact with the supervisors, co-workers and the general public." He also noted that Claimant "could work alone and remain attentive to her duties with the restrictions mentioned." He primarily relied upon Claimant's adult function report for determining her social functioning with others and the general public. He relied upon Dr. Spray's examination with regard to Claimant's memory, noting Claimant only had a "mild memory impairment." (Tr. 36, 90-94).

Because the ALJ's RFC determination relied heavily upon the testimony of Dr. Adams, and Dr. Adams's review of the evidence did

9

not include Dr. Spray's second mental examination or the medical source statement, the Court cannot find that Claimant's mental RFC is supported by substantial evidence. Although Claimant's memory and cognitive function are similar between the two examinations, Claimant did report additional impairments related to her social anxiety, and Dr. Spray's medical source statement included limitations in other areas of functioning. Accordingly, on remand, the ALJ should reassess Claimant's RFC, including consideration of Dr. Spray's most recent mental examination and the medical source statement, and then determine if there is work Claimant can perform.

## Physical RFC Determination

Claimant also contends the ALJ failed to include limitations in the RFC pertaining to her non-severe impairments of psoriatic arthritis, COPD, and heart impairment. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is

10

whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 2000 WL 1028250, at *1 (10th Cir. 2000) (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

To the extent Claimant contends her psoriatic arthritis, COPD, and heart impairment should have been included as a severe impairment at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id*., quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291–292 (10th Cir. 2008).

Although the ALJ did not find Claimant's psoriatic arthritis, COPD, and heart impairment were severe impairments at step two, he did consider them in his decision and in formulating the RFC. The ALJ noted the evidence showed "periodic flares of psoriasis or related skin rashes," but there was no showing of "significant

11

functional limitations" associated with the condition. (Tr. 27-28). He also discussed Claimant's allegations of asthma, sleep apnea, and shortness of breath, noting the allegations were not objectively well-supported, and Claimant smoked a pack of cigarettes per day. He determined that Claimant's ability to smoke without "regular exacerbations of her breathing problems [was] inconsistent with her alleged disabling pulmonary impairment." (Tr. 28). He further discussed Claimant's allegation of an enlarged heart, but he noted such an impairment was not supported by objective medical evidence, as she was not receiving treatment for the condition. (Tr. 28). The ALJ determined these medically determinable impairments were non-severe, as they caused no more than minimal limitations in Claimant's ability to perform basic work activities. (Tr. 27).

The ALJ also considered these non-severe impairments in his summary of the medical evidence when assessing the RFC. When discussing the medical evidence in the RFC determination, the ALJ referenced findings by B. Don Schumpert, D.O., with regard to Claimant's psoriasis, including that although she experienced psoriatic rash and some reported pain with range of motion, her examination was "fairly unremarkable." (Tr. 32). He discussed assessments by Claimant's physician of rheumatoid arthritis and psoriatic arthritis by history and COPD. He noted that Dr. Schumpert did not make a formal diagnosis of the conditions based

12

upon objective findings. The ALJ also referenced a notation by Dr. Schumpert of questions from an individual accompanying Claimant to one of her appointments of whether Claimant suffered from congestive heart failure and multiple other illnesses. The ALJ noted there was limited evidence of mild hypertensive heart disease. (Tr. 32). He considered the combined effects of Claimant's obesity with her other impairments. (Tr. 34). The ALJ's decision demonstrates that he did not simply disregard Claimant's psoriatic arthritis, COPD, and heart impairment. The record indicates that the ALJ considered the effects of both severe and non-severe impairments in his decision. 20 C.F.R. § 404.1545(a)(2). The Court finds no error.

### Evaluation of Opinion Evidence

Claimant contends the ALJ failed to properly evaluate the opinion of her treating physician Dr. Willis. She asserts that the reasons provided by the ALJ in his decision for rejecting Dr. Willis's opinions are not supported by the record. Dr. Willis began providing treatment to Claimant in January of 2016. (Tr. 33-34, 474-89, 494-96). He completed a physical RFC evaluation for Claimant on August 29, 2016, which included limitations which would have precluded Claimant from working. (Tr. 33-34, 490-93).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide

13

specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ specifically discussed Dr. Willis's treatment of Claimant and his evaluation of her physical limitations. He determined Dr. Willis's opinions on the evaluation were not entitled to controlling weight, but instead assigned little weight to his opinions. The ALJ provided several reasons for rejecting Dr. Willis's opinions, including that Dr. Willis failed to identify an objective basis for the extreme limitations in his assessment, which failed "to satisfy the supportability factor or the consistency factor of the opinion evaluation criteria." He also

14

determined that Dr. Willis's examination records did not support his extreme limitations. As an example, he referenced "the progress note from the same date as [the] medical source statement shows little of anything to support any of his limits." The ALJ noted that Dr. Willis was not a specialist in pain management, and that if Claimant's condition resulted in such extreme limitation, it would have been reasonable for Dr. Willis to recommend physical therapy, steroid injections, nerve blocks, or some form of corrective surgery.  (Tr. 33-34). The Court finds no error in the ALJ's evaluation of Dr. Willis's opinions.

Claimant next asserts the ALJ erred by giving the opinion of the medical expert, Dr. Eppstein, significant weight. She contends the opinion cannot serve as substantial evidence to support the RFC, because Dr. Eppstein never examined her and he ignored much of the record evidence, including records from Dr. Willis.

The ALJ considered Dr. Eppstein's opinions in the decision. He provided specific reasons for the weight he assigned to the opinions. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."). He discussed Dr. Eppstein's testimony that Claimant had psoriasis of the skin and generalized joint pain, but there was no clinical evidence of arthritis. Dr. Eppstein noted that Claimant was obese. He testified that although Claimant had COPD, she smoked

15

a pack of cigarettes per day. He limited Claimant to lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and walking four hours during an eight-hour workday, and sitting six hours in an eight-hour workday. Claimant could occasionally climb ramps or stairs, but she could never climb ladders, ropes, or scaffolds. She could occasionally bend, stoop, crouch, or crawl, and she was to avoid extremes of heat. (Tr. 35, 80-81).

The ALJ made references from the record supporting Dr. Eppstein's opinions for lifting, standing, walking and sitting. (Tr. 35). He determined the environmental limitations imposed by Dr. Eppstein were entitled to no weight because there was no direct support in the record for such limitations. He noted Dr. Eppstein did not give Dr. Willis's opinion any weight because the extreme limitations were not supported by the medical records and because Dr. Willis failed to provide objective findings to support his opinions. (Tr. 35, 82-89). It is "the ALJ, not a physician, [who] is charged with determining a claimant's RFC from the medical record." *Howard* v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004), citing Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *5. The Court finds no error in this regard.

### Subjective Complaints

Claimant further contends the ALJ failed to properly evaluate her subjective complaints. She asserts the ALJ failed to engage in

16

the required analysis and that the justifications offered are not supported by the evidence. Because the evaluation of Claimant's pain and other symptoms is tied closely to the RFC determination, the ALJ should reconsider his assessment of Claimant' subjective complaints on remand. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

### Step Five Determination

Claimant asserts the ALJ's hypothetical questioning of the VE was improper because he failed to include all of Claimant's limitations in the RFC.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The Court is remanding the case for the ALJ to re-evaluate the RFC based upon Claimant's mental limitations. Thus, he may be required to further modify the hypothetical questioning of the VE to accommodate any changes made to Claimant's RFC.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of the Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 11th day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE